Phil S. Flemming (#014778)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 20
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@robainalaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Gaddis,<br><br>        Plaintiff,<br><br>v.<br><br>American Homes 4 Rent, L.P., a California limited partnership doing business in Arizona as American Homes 4 Rent-AZ, L.P.<br><br>        Defendant. | **No.**<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Anthony Gaddis, Plaintiff, by his undersigned counsel, alleges the following in support for the Complaint against Defendant American Homes 4 Rent, L.P. ("AH4R" or Defendant):

**NATURE OF ACTION**

1. This action arose after Mr. Gaddis, a three-year employee with AH4R (formerly American Residential Properties), exercised his rights under the Family Medical Leave Act ("FMLA"), the Arizona Civil Rights Act ("ACRA"), and the Americans with Disabilities Act, as amended ("ADA") due to his qualifying disability and serious impairment from a rare form of blood cancer. When he returned to work, AH4R failed to return him to the same or a similar position and instead set him up for failure, which led to AH4R wrongfully terminating him on July 6, 2017.

**PARTIES, JURISDICTION AND VENUE**

2. Mr. Gaddis resides in Maricopa County, Arizona and is a citizen of the

United States.

3. Defendant AH4R is a limited partnership based in Agoura Hills, California.

4. Defendant AH4R does business in Arizona as American Homes 4 Rent-AZ, L.P.

5. Defendant caused events to occur in Arizona which give rise to the claims in this action.

6. During the relevant period of these claims, Defendant was continuously an employer and Mr. Gaddis was an employee of AH4R, within the meaning of relevant law.

7. This Court has proper jurisdiction, pursuant to 28 U.S.C. § 1331, over the federal questions presented by claims under 29 U.S.C. § 2617 and 42 U.S.C. § 12117.

8. Supplemental jurisdiction over Mr. Gaddis's state law claims is properly based upon 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims occurred in this District.

11. Mr. Gaddis has exhausted his administrative remedies, as required by law. He timely filed with a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC dated January 19, 2018.

12. This action is timely commenced within ninety-days of Plaintiff's receipt of the Notice of Right to Sue.

**FACTUAL BACKGROUND**

13. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

14. Defendant's predecessor, American Residential Properties ("ARP"), hired Mr. Gaddis as a project manager, during 2014.

15. Mr. Gaddis subsequently was promoted to the position of Director and later to the position of Vice President of Maintenance and Repairs. Mr. Gaddis performed well.

2

16.    In December of 2015, Defendant AH4R merged with ARP and named Mr. Gaddis as the Divisional Manager of the Western United States.

17.    As the Divisional Manager, Mr. Gaddis was responsible for the Western half of the country and John Elsey for the Eastern half. Mr. Gaddis performed his job well.

18.    Mr. Gaddis was diagnosed with multiple myeloma, a rare blood cancer, in In April 2016, that required immediate treatment.

19.    Mr. Gaddis informed the Human Resource Office of Defendant AH4R of the diagnosis and his need for intermittent leave under the FMLA.

20.    Defendant granted Mr. Gaddis intermittent leave to attend twice weekly medical appointments.

21.  Mr. Gaddis did not inform his direct supervisors of his serious impairment, at that time, because he was able to continue to perform the functions of his job and work around his medical treatments. Mr. Gaddis continued to travel and work long hours as part of his job, and simply adapted the schedule around his medical treatments.

22.    During July 2016, Defendant's Vice-President of Acquisitions, Construction and In-House Services, Zack Johnson, asked Mr. Gaddis to reschedule a series of interviews in Salt Lake City, Utah from a Wednesday to Tuesday. Mr. Gaddis said he had a prior commitment on Tuesday and could not move the Salt Lake City interviews.

23.    Mr. Johnson was annoyed and stated he would "get someone else." Mr. Gaddis determined that he had no other choice than to disclose his cancer diagnosis to his supervisor, Mr. Johnson. Mr. Gaddis explained he could not reschedule the interviews to Tuesday because he received treatments for his blood cancer on Tuesdays.

24.    Immediately after Mr. Gaddis had disclosed his serious impairment and need for intermittent leave, Defendant changed the way it treated Mr. Gaddis in the workplace.

25.    Only two days after disclosing Plaintiff's cancer diagnosis to Mr. Johnson, Mr. Johnson and Ms. Darkoski notified Mr. Gaddis that he no longer would manage Texas,

3

and that he would no longer travel.

26. Mr. Gaddis objected to the reduction of his duties, but Mr. Johnson and Ms. Darkoski gave him no choice, claiming he was not staffing Texas in a timely manner and that they were trying to do what was best for Mr. Gaddis.

27. Shortly thereafter, Mr. Gaddis informed his direct supervisor, Travis Buchanan, about his cancer and treatments and his concerns that his duties were being changed without any justification.

28. Instead of helping to resolve Mr. Gaddis's concerns, Mr. Buchanan claimed that Mr. Gaddis was unable to travel to Texas for work because of his treatments, based upon management's perceptions of his impairment.

29. Mr. Gaddis was able to continue traveling to Texas for work and had only declined one trip to Texas due to conflicts with other work for AH4R (fleet management, product procurement, etc.).

30. During late summer of 2016, Mr. Gaddis learned he needed a stem cell transplant. He feared Defendant would terminate him if he exercised his rights to take time off, resulting in anxiety as he considered what he needed to do.

31. Mr. Gaddis arranged to have the transplant procedure and to take FMLA leave during October 2016. He communicated with Defendant's Human Resources personnel and his supervisors, who assured that he would be returned to his position following his leave, so long as no accommodations were required for him to perform his job functions.

32. On or about December 1, 2016, Mr. Gaddis contacted his supervisors, Mr. Johnson and Mr. Buchanan, and notified them of his intent to return to work on December 6, 2016. Neither of them responded.

33. Several days later, Defendant's Vice President of Human Resources contacted Mr. Gaddis and unexpectedly provided him with a new job description for the Manager of Pilot Programs, a position that reported to Mr. Elsey, who previously had been Mr. Gaddis's equal.

4

34. The new job was not similar or equal to Mr. Gaddis's position of Divisional Manager of the Western United States when he took FMLA leave.

35. Mr. Gaddis was upset and confused at the Defendant's action of taking away his prior job and title and giving him a newly created position with which he was not familiar, especially after management had assured him that he would return to the same position.

35. Mr. Gaddis believed Defendant was interfering with his rights under FMLA to return to his same job or a similar position when he returned from leave.

36. Mr. Gaddis asked why he was being assigned to a newly created job and who was taking over the Western half of the country. He was told that Mr. Elsey would manage the entire country, the Eastern and Western divisions, because everything was operating smoothly, almost on autopilot, and only one manager was needed.

37. When Mr. Buchanan described the new Manager of Pilot Programs position to Mr. Gaddis, it appeared that Defendant did not want or expect Mr. Gaddis to return to work. The duties for the Manager of Pilot Programs job differed greatly from Mr. Gaddis's previous duties as the Divisional Manager.

38. As described by Mr. Buchanan, the Manager of Pilot Programs job required Mr. Gaddis to input numbers and data into Excel spreadsheets and to analyze the information. All of these duties were beyond any of Mr. Gaddis's previous training and work experience. He was unfamiliar with Excel, the work with this type of data analysis, and the company reporting and tracking of expenditures and other financial information.

39. Mr. Gaddis told Mr. Buchanan he was not familiar with Excel and the tasks required for the newly created job. Mr. Gaddis asked to be returned to his former position. He explained that he was concerned about his lack of expertise in this new position and concerned that his job was no longer safe. In response, Mr. Buchanan remained silent.

40. Mr. Buchanan treated Mr. Gaddis coldly and unfriendly, during their discussion.

5

41. Later, Mr. Buchanan provided training in Excel spreadsheets to other managers but did provide the training not to Mr. Gaddis. Mr. Gaddis only learned about the Excel training after-the-fact.

42. After Mr. Gaddis had returned from FMLA leave and assumed the newly created job of Manager of Pilot Programs, he attended a company meeting in Las Vegas, where many executives he knew also were in attendance. At that meeting, none of the executives he knew and previously had interacted with even talked with him. These formerly friendly work colleagues now treated him unfriendly. It was apparent that Defendant was pushing Mr. Gaddis out, to get him to quit employment.

43. In spite of the negative work environment, Mr. Gaddis assumed the new position he had been forced into and worked hard. Under the stress of learning an entirely new job for which he was unprepared and while he continued medical treatments, Mr. Gaddis often became excessively tired and anxious.

44. Mr. Gaddis requested help from management to perform duties that required more than one person to accomplish. He received no assistance.

45. Mr. Gaddis complained that Defendant's management interfered with his FMLA rights and he was being treated poorly and unfairly.

46. Defendant responded to Mr. Gaddis's complaints by asking if he needed accommodations.

47. Mr. Gaddis remembered that, before he took FMLA leave, management had said he could return to his job so long as he did not need accommodations. Fearful of losing his employment, Mr. Gaddis said he did not need an accommodation at that time, but that he did need intermittent breaks during the workday, to refresh himself, which he was already doing. He asked to be treated fairly and to be returned to his previous position.

48. Mr. Gaddis performed as Manager of Pilot Programs under Mr. Elsey, his former equal. Mr. Elsey directed him to prepare reports that were not required of other managers. Although the team was performing high, Mr. Gaddis was instructed to

6

1 prepare productivity reports not expected of other managers.

2 49. The work environment in which Mr. Gaddis worked completely changed for the worse after he returned from FMLA leave. Defendant failed to return him to his prior job and instead set him up to fail. Defendant subjected Mr. Gaddis to unfair criticism about his work in a newly created position, that he was unprepared for and for which he was not provided training or support. Defendant ostracized him.

50. In approximately February 2017, Mr. Gaddis sent a formal complaint via email to Janice Stack, Vice President of Human Resources. He explained that he was being treated differently and unfairly since he had returned from FMLA leave, that he was badgered and harassed on the job, and that he was in constant fear for his job because he was impossibly tasked with doing the work of multiple people and lacked knowledge with data analysis.

51. Ms. Stack replied that Human Resources office would conduct an investigation. Approximately a month later, she reported that the investigator found no wrongdoing. Defendant was indifferent to Mr. Gaddis's complaints and to Defendant's legal obligations.

52. Mr. Gaddis learned that other managers had been issued company credit cards so they no longer had to prepare expense reimbursement reports. Mr. Gaddis requested a corporate card, like his peers had, but did not receive one until nearly six months later. Consequently, he incurred expenses and paid interest when Defendant's reimbursement was not timely. Mr. Gaddis continued to travel back and forth between Phoenix and Atlanta, while he attempted to perform the excessive tasks assigned to him with little or no assistance.

53. During the summer of 2017, after Mr. Elsey returned from a vacation, he asked Mr. Gaddis to meet with him on July 6.

54. Mr. Gaddis attended the meeting where Ms. Stack already was present. As soon as he walked in, Mr. Elsey told Mr. Gaddis that he was terminated him immediately. Mr. Elsey left him with Ms. Stack to complete paperwork.

7

55. Mr. Gaddis asked Ms. Stack why he was being terminated and she replied that it was a mutual separation. Mr. Gaddis did not want to be terminated, so there was no mutual separation.

56. Defendant terminated Mr. Gaddis after learning he had cancer, after Defendant told him he could not be accommodated, after he took FMLA leave, after Defendant interfered with his rights to be returned to the same job, after Defendant made his work nearly impossible, treated him poorly, and after he complained about Defendant's interference and unfair treatment.

57. Defendant's conduct was malicious and reckless in disregard of Mr. Gaddis's legal rights and his loyalty and integrity as a hard-working employee.

58. Mr. Gaddis suffered damages and was injured as a result of Defendant's wrongful actions.

## CLAIM I

## INTERFERENCE FOR EXERCISING RIGHTS

## AFFORDED UNDER THE FMLA, 29 U.S.C. §§ 2601, *et seq.*

59. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

60. Defendant is an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and Mr. Gaddis is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

61. Mr. Gaddis was entitled to be turned to his previous position after he took his FMLA leave, pursuant 29 U.S.C. § 2614 and the related regulations.

62. Defendant denied Mr. Gaddis restoration to his same or equivalent position as required by the in FMLA, 29 U.S.C. § 2654; 29 C.F.R. § 825.214.

63. Defendant interfered with, restrained, and denied Mr. Gaddis's exercise of his FMLA rights, thereby violating the FMLA, 29 U.S.C. § 2615 and the related regulations.

64. Defendant interfered, discriminated and retaliated against Mr. Gaddis for his exercise of rights and complaints of violations of the FMLA, by subjecting him to

8

adverse employment actions because he exercised FMLA rights, in violation of 29 U.S.C. § 2601, *et seq.* and the related regulations, including 29 C.F.R. § 825.220 (c) and (e).

65. As a result of Defendant's wrongful acts, Defendant is liable to Mr. Gaddis for the equitable relief of reinstatement, the statutory liquidated damages, and the relief for the damages and interest he has incurred and is continuing to incur, for loss of wages and benefits within the meaning of the FMLA, 29 U.S.C. § 2617, interest and attorneys' fees in an amount to be proved at trial.

## CLAIM II

## VIOLATION OF ARIZONA CIVIL RIGHTS ACT,

## A.R.S. § 41-1461, *et seq.*

66. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

67. The Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B) provides:

It is an unlawful employment practice for an employer:

1. To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.

68. Defendant is an "employer" and a "covered entity" and Mr. Gaddis is an "employee" within the definitions of the ACRA set forth in A.R.S. § 41-1411.

69. As a result of a diagnosis of blood cancer, Mr. Gaddis is an individual with a serious impairment of a "major life activity," as defined by A.R.S. § 41-1411(9).

70. Mr. Gaddis was a qualified person with a disability who performed work successfully for Defendant, but after he disclosed his cancer diagnosis and his need for accommodation to receive treatments, Defendant unjustifiably changed the essential functions of his job duties and began to treat him differently.

71. Defendant told Mr. Gaddis he would be returned to his prior job after he took leave for medical treatment, so long as he did not need accommodation.

9

72. When Mr. Gaddis returned from leave, Defendant discriminated against him by treating him differently, refusing to reinstate him to his prior job and instead requiring him to work in a job that was not within his field of experience, failing to provide training and support and setting him up to fail.

73. After months of being unfairly treated, criticized, harassed and ostracized, Mr. Gaddis complained to the Human Resources Office.

74. Defendant failed to take any meaningful action to rectify the discriminatory treatment toward Mr. Gaddis and retaliated against him for his complaint by terminating him approximately three months after it closed its investigation of his complaint.

75. Defendant violated A.R.S. § 41-1463(B)(1), by discriminating against Mr. Gaddis and terminating him based upon his disability or upon Defendant's regarding him as having a disability.

76. Defendant unlawfully retaliated against Mr. Gaddis based upon his disability or upon Defendant's regarding him as having a disability.

77. As a direct result of Defendant's violations of Mr. Gaddis's rights under the ACRA, Defendant is liable to Mr. Gaddis for the equitable relief of reinstatement, recovery of damages, including but not limited to back pay and front pay, with benefits, interest, compensatory damages, attorneys' fees and other relief to be made whole, as proven at trial.

## CLAIM III

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101, *et seq.*

78. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

79. Plaintiff is a qualified person with a disability, as defined by 42 U.S.C. § 12102(2).

80. Defendant refused to provide reasonable accommodations based on disability or being regarded as having a disability, in violation of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12112(b)(5).

81. Defendant unlawfully refused to provide accommodations and discriminated against Mr. Gaddis based upon his having a disability or being regarded as having a disability.

82. Defendant retaliated against Mr. Gaddis after he returned from leave and after he complained of the denial of his equal employment rights and adverse treatment.

83. Defendant retaliated against Mr. Gaddis by terminating him, based upon his disability or upon Defendant's regarding him as having a disability.

84. As a direct result of Defendant's violations of Mr. Gaddis's rights under the ADA, Defendant is liable to Mr. Gaddis for the equitable relief of reinstatement, recovery of damages, lost income, interest, compensatory damages, attorneys' fees and other relief to be made whole, as proven at trial.

85. Mr. Gaddis is entitled to punitive damages against Defendant, to deter their unlawful employment practices in violation of the ADA.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests entry of Judgment against Defendant, finding it liable on each claim. As remedies for Defendant's wrongful acts, Plaintiff requests:

- A. an award of back pay, lost benefits and interest;
- B. an award of front pay in an amount sufficient to compensate Plaintiff for lost income and benefits resulting from Defendant's conduct;
- C. an award of liquidated damages, available pursuant to 29 U.S.C. § 2617;
- D. declaratory and equitable relief reinstating Plaintiff to the position he should have but for Defendant's wrongdoing;
- E. an award of compensatory damages for emotional distress and other losses incurred by Plaintiff as a result of Defendant's conduct;
- F. an award of punitive damages;
- G. an award of attorneys' fees and related costs;
- H. an award of prejudgment and post-judgment interest;

11

1       I.    an award of such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Mr. Gaddis demands trial by jury on all matters that may be decided by a jury.

DATED this 9th day of April 2018.

                ROBAINA & KRESIN PLLC

                By   /s/ Phil S. Flemming
                          Phil S. Flemming
                          Attorneys for Plaintiff